UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MILWAUKEE ELECTRIC TOOL CORPORATION, METCO BATTERY TECHNOLOGIES, LLC, AC (MACAO COMMERCIAL OFFSHORE) LIMITED, and TECHTRONIC INDUSTRIES CO. LTD.,

*Plaintiffs and Counterclaim Defendants*,

v.

POSITEC TOOL CORPORATION and POSITEC USA, INC,

*Defendant and Counterclaim Plaintiff.*

Case No. 2:14-CV-01295-JPS

Hon. J.P. Stadtmueller

---

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO PARTIALLY LIFT STAY TO CONDUCT DISCOVERY**

---

Plaintiffs move to lift the stay to allow for discovery to proceed because Plaintiffs won the first round of *inter partes* review proceedings, and it has become apparent that all of the *inter partes* reviews filed by all of the defendants are likely to fail. Meanwhile, defendant's infringing sales are eroding plaintiffs' business at major customers and witnesses' memories of events now well over a decade old are becoming increasingly stale.

Nearly two years ago on October 16, 2014, Milwaukee Tool initiated its complaints against Chervon North America, Inc. ("Chervon") and Positec Tool Corporation and Positec USA, Inc. ("Positec") (collectively "Defendants"). On January 21, 2015, Chervon, Positec, and Hilti filed three petitions for *Inter Partes* Review ("IPR") seeking to invalidate the '290 Patent, the '173 Patent, and the '510 Patent (collectively, "the Milwaukee Patents"). On July 31, 2015, the Patent Trial and Appeal Board ("PTAB") granted these petitions and on October 2, 2015, the

Court stayed this case pending a decision from the PTAB in IPR Nos. 2015-00595, 2015-00596, and 2015-00597. *Milwaukee Elec. Tool Corp. v. Hilti, Inc.*, 138 F. Supp. 3d 1032, 1043 (E.D. Wis. 2015).

A year after instituting review, the PTAB issued a final written decision in each of the IPRs upholding the patentability of all challenged claims in the Milwaukee Patents. *See* ECF Nos. 118-1, 118-2, 118-3.[1] Now that Chervon and Positec lost the IPRs that were the basis for the stay and the PTAB once again confirmed the validity of the Milwaukee Patents, the original justification for the stay no longer applies.

While other defendants have also initiated IPRs in the interim, there is now little reason to believe either of the later-filed IPRs brought by Hilti and Snap-On will conclude differently. At the oral argument in the Hilti IPRs, the PTAB expressed serious concerns about the petitioners' arguments because their key prior art reference did not disclose the 20-amp limitation contained in the Milwaukee Patents and they relied on impermissible hindsight to try to fill the gap. *See* PTAB Hr'g Tr. 15:7–19:8, 28:16–21, 31:1–8, 32:21–33:17, July 28, 2016, ECF No. 123-1. And in the Snap-On IPRs, petitioners' central prior art reference previously was considered and rejected by the patent office in an earlier reexamination of these same patents.

Meanwhile, the stay is hurting plaintiffs. Chervon and Positec are direct competitors of Plaintiffs that have been able to continue their improper use of Plaintiffs' patented technology as they battle with Plaintiffs in the marketplace for customer goodwill and retail channels, neither of which are easily recovered once a competitor makes substantial inroads though use of infringing product offerings. And witnesses' memories of events now well over a decade old grow ever more stale.

[1] Unless otherwise noted, all docket citations refer to filings made in *Milwaukee Electric Tool Corp. v. Chervon North America, Inc.*, Case No. 14-cv-1289.

As the Court observed when it granted the stay, substantial fact discovery remains to be done. Chervon requires discovery overseas as many of its witnesses and documents are in China and many of the documents are written in Chinese, so they may require expensive and time consuming translations. Even if the Court does not immediately establish a new trial date pending the outcome of the remaining IPRs, it would promote justice and efficiency at least to let the discovery process begin again in light of defendants' diminished likelihood of success before the PTAB.

## I. LEGAL STANDARD

"A court may lift a stay if the circumstances supporting the stay have changed such that the stay is no longer appropriate." *Murata Mach. USA v. Daifuku Co.,* No. 2015-2094, 2016 WL 4073320, at *3 (Fed. Cir. Aug. 1, 2016); *see also Canady v. Erbe Elektromedizin* GmbH, 271 F. Supp. 2d 64, 74 (D.D.C. 2002) ("When circumstances have changed such that the court's reasons for imposing the stay no longer exist or are inappropriate, the court may lift the stay."). In deciding whether to lift a stay, courts typically consider three factors: (1) the stage of the litigation, including whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *Milwaukee*, 138 F. Supp. 3d at 1036; *see also Murata*, 2016 WL 4073320, at *3 (same).

### A. Significant Discovery Still Remains to be Completed

While a significant amount of written discovery occurred in this case prior to the stay, there are several major items of discovery still pending. The Court recognized at the time of instituting the stay that "a significant amount of expert and fact discovery remains, particularly as to the taking of depositions," *Milwaukee*, 138 F. Supp. 3d at 1037, and Chervon readily acknowledged that a significant amount of discovery remained to be completed. *See* Chervon

Opening Br. 10, ECF No. 65. The parties have extensive written discovery remaining, including a variety of disputes over document production that were pending at the time of the stay. Prior to the Court's stay, Chervon agreed to deposition dates for six of its witnesses, which will need to be rescheduled, along with 30(b)(6) depositions for each party. And depositions have not begun with Positec. Resuming deposition discovery is particularly important here as witnesses' memories fade due to the passage of time and critical facts concerning the issues in dispute relate to events that occurred approximately 15 years ago. Several courts have recognized that stays are inherently prejudicial because witnesses may become unavailable, their memories may fade, and evidence may be lost while PTO proceedings take place. *See, e.g., Ambato Media, LLC v. Clarion Co.*, No. 2:09-CV-242-JRG, 2012 WL 194172, at *1 (E.D. Tex. Jan. 23, 2012) (citing *Gladish v. Tyco Toys, Inc.*, No. CIV. S–92–1666WBS/JFM, 1993 WL 625509, at *2 (E.D. Cal. Sept. 15, 1993)). This factor thus weighs strongly in favor of lifting a stay to resume discovery.

### B. Continuing A Stay Is Highly Unlikely To Simplify The Issues In This Case Or Streamline The Trial.

Chervon and Positec's attempt to invalidate Milwaukee Tool's patents through the IPRs was unsuccessful. The PTAB affirmed each and every challenged claim in Milwaukee Tool's patents. *See* ECF Nos. 118-1, 118-2, 118-3. The PTAB's final written decision triggered the IPR estoppel provision under 35 U.S.C. § 315(e). *See Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 983 F. Supp. 2d 713, 753 (E.D. Va. 2014) ("[T]he preclusive effect of a PTAB final determination is triggered when the PTAB issues its final written decision — regardless of whether an appeal is taken to the Federal Circuit"), *vacated and remanded on other grounds* by *Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 614 F. App'x 503 (Fed. Cir. 2015); *see also Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, No. 6:11cv492, 2015 WL 11439060, at *4 (E.D. Tex. Jan. 5, 2015).

The pending IPRs filed by Hilti, which Snap-On joined (IPR Nos. 2015-1164, 2015-1165, 2015-1166), and by Snap-On (IPR Nos. 2015-1242, 2015-1243, 2015-1244) are unlikely to simplify the issues in this case further or alter the result.

In the recent oral argument in the Hilti IPRs, the same PTAB panel that decided the Chervon/Positec IPRs made clear that it found petitioners' arguments wanting as well. First, the PTAB stated that Hilti's primary reference, Yanai, did not disclose the 20-amp limitation contained in the Milwaukee Patents:

> JUDGE DeFRANCO: The problem here is that Yanai talks about discharge current, it talks about power tools, it's got a bunch of numbers in here. So you would think, okay, as I'm reading this reference, they are going to get to the 20-amp limitation, but they never get there. As much detail as Yanai has, it never says 20 amps.
>
> MR. LINDSAY [arguing for petitioners]: That is the point. Yanai is extremely detailed compared to the tiny disclosure that we have.
>
> JUDGE DeFRANCO: Then why doesn't it say 20 amps? If it was so obvious, why doesn't it say it?
>
> JUDGE OBERMANN: Why doesn't it as least give us a range that that's what we are looking for, that's where we are going?
>
> MR. LINDSAY: Well, one of the applications in Yanai are electric vehicles, hybrid vehicles. These are high-powered vehicles --
>
> JUDGE DeFRANCO: That doesn't help you. That's why I'm thinking it's all over the place, because it's trying to take in too much. It's got this laundry list of different applications. And so it's spreading itself too thin instead of focusing right in on the amp limitation for the power tool.

PTAB Hr'g Tr. 18:11–19:8.

Second, the PTAB displayed similar skepticism about Hilti's attempt to bootstrap the 20 amp limitation by calling it "common knowledge" and citing a reference (Adachi) that was not even included in the IPR petition:

> JUDGE DeFRANCO: So going back to this common knowledge, do you need this common knowledge in addition to Yanai to make the obviousness argument to work?

MR LINDSAY: Yes, you need, as you should, with an obviousness analysis, you should consult what was known in the art.

. . .

JUDGE OBERMANN: We are here to look at whether you have met your burden. I would like you to point me to where in the petition you meet our rule that requires a full statement of the reasons for the relief requested, including a detailed explanation of the significance of the evidence. That's our rule against incorporation. It's 42.22(a)(2). And I don't see how we can -- if you are going to rely on this third reference that's not mentioned in your ground --

. . .

JUDGE OBERMANN: I guess I'm still stuck, because I'm looking at your petition, and what you have said in the petition is that Yanai provides sufficient specific battery cell material data that when combined with common knowledge in the art with respect to the battery cell parameters, then you refer us to 20 pages of a declaration but you don't discuss the battery cell parameters. If to get to where you want to go, those parameters make a difference, why shouldn't we require that you had put patent owner on notice by putting it in the ground?

MR. LINDSAY: I hear you, Your Honor. I think the patent owner has put us all on notice that these are all well known. That's what they told the examiner and that's what they've said again --

JUDGE OBERMANN: I don't believe the patent owner was describing the disclosure of -- correct me if I'm wrong. During the re-exam were they describing the disclosure of Yanai?

MR. LINDSAY: No.

JUDGE OBERMANN: Were they describing the disclosure of Adachi?

MR. LINDSAY: No.

JUDGE OBERMANN: Then I'm not getting it.

*Id.* 28:16–21, 31:1–8, 32:21–33:17.

And finally, the PTAB expressed concern that only impermissible hindsight explains why a person of ordinary skill in the art would have been motivated to combine prior references to develop a battery pack with plaintiffs' 20 amp limitation:

> JUDGE OBERMANN: When they were before the examiner, it was defined by the patent itself. What we are interested in is for you to address why that's not hindsight in the context of an obviousness analysis. What are you relying on? Here you have us looking at something that talks about design choice. That goes to reason to combine or to actually -- without working from the claim itself. So you need to address that distinction for us.
>
> MR. LINDSAY: Absolutely. So the claims talk about the capability of the cells. It doesn't provide any particular relevance or importance to the 20 amp as a single value. It's actually the bottom of a range. It could be anything that's reasonably close to 20 amps or above. So when looking to see if that was obvious to make the cell that was capable of 20 amps or above, you look to the prior art to see if there are cells that are capable of that.
>
> JUDGE OBERMANN: If you go back in time, somebody wouldn't have looked for that unless they were looking to do 20 amps. Why wasn't it hindsight? What they were saying is that it was possible to do what they claimed, that the tools were there to do it, but they had the claim in front of them and said this is what we want to do. What at the time of the invention would have led an ordinary artisan to want to do that?
>
> MR. LINDSAY: There's evidence in the record that shows that lithium-ion technology was replacing nickel-cadmium technology. It was moving through, again, with the laptop industry, the cell phone industry, very large addressable markets. It moved into a smaller tool industry, the Exo, the Dremel, the things talked about in the petition, in the reply, more so in the reply --
>
> JUDGE DeFRANCO: Mr. Lindsay, we totally get that. We get that the technology was moving to lithium. But the problem here is the claim doesn't just say lithium. It talks about a 20-amp limitation. So how is the industry moving in that direction or where do you get it from?

*Id.* 15:22-17:8. These weaknesses leave little reason to think Hilti will prevail where Chervon and Positec did not.

Snap-On's IPR petition is similarly unlikely to succeed. Snap-On's petition for IPR relies on a combination of three alleged prior art references: Fohr, Sato, and Hallaj. Law Decl. Ex. B, at 15, ECF No. 123-2. Fohr and Sato were considered and rejected by the PTAB in the prior failed reexaminations of these patents, and Hallaj teaches heat absorption for low power applications like cell phones, exactly the opposite of the heat dissipation that is critical to high power applications for power tools. *See* Law Decl. Ex. C at 6, ECF No. 123-3; *id.* Ex. D at 10,

ECF No. 123-4; *id.* Ex. E at 6, ECF No. 123-5; *id.* Ex. F, Riley Dep. 130:6–132:6, Feb. 11, 2016, ECF No. 123-6.

Not only are defendants' remaining IPR attacks unlikely to succeed, a continued stay is unlikely to further simplify the issues or trial because the remaining issues in dispute can only be addressed by this Court. The IPRs will not address Chervon's willful infringement or damages. Chervon's counterclaims for unenforceability of the patents-in-suit also must be decided by this Court. And the IPRs will not fully resolve all of Chervon's invalidity challenges under 35 U.S.C. §§ 102 and 103, because Chervon has asserted product prior art that cannot be adjudicated by the Patent Office. *See* Pls' Ex. C, Chervon's Third Suppl. Resp. to Interrog. No. 7 at 13-14, ECF No. 75-3. Defendants' diminished likelihood of success in the remaining IPRs no longer outweighs deferring the issues that only can be resolved by this court.

### C. Further Delays Will Unduly Prejudice Milwaukee Tool Because Chervon and Positec are Direct Competitors.

The final factor—whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party—also favors lifting the stay. Chervon competes directly with Plaintiffs in the original equipment manufacturing market for handheld power tools utilizing lithium-ion battery packs sold in the United States. Nelson Decl. ¶ 4, ECF No. 121 (hereinafter "Nelson Decl. (Chervon)"). Chervon and Positec also compete directly with Plaintiffs in the retail market for handheld power tools utilizing lithium-ion battery packs. *Id.* ¶ 5; Moll Decl. ¶ 4, ECF No. 122 (hereinafter "Moll Decl. (Chervon)"); Nelson Decl. ¶ 4, ECF No. 88 (Case No. 2:14-CV-1295) (hereinafter "Nelson Decl. (Positec)"); Moll Decl. ¶ 4, ECF No. 89 (Case No. 2:14-CV-1295) (hereinafter "Moll Decl. (Positec)"). Chervon willfully infringed plaintiffs' patents by copying by copying the revolutionary technology in an effort to thwart plaintiffs' market momentum. *See* Pls.' Resp. Br. 1–3, ECF No. 74-1. Continuing the stay would enable

Defendants to keep eroding plaintiffs' business by insinuating themselves more deeply into key customer accounts and making it ever more difficult to displace them. Nelson Decl. (Chervon) ¶ 6; Nelson Decl. (Positec) ¶ 5, Moll Decl. (Chervon) ¶ 5; Moll Decl. (Positec) ¶ 5; see *also Avago Techs. Fiber IP (Signapore) Pte. Ltd. v. IPtronics Inc.*, No. 10-CV-028630-EJD , 2011 WL 3267768, at *5 (N.D. Cal. Jul. 28, 2011) ("Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages."); see also *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014) ("[C]ompetition between parties can weigh in favor of finding undue prejudice[.]")

Furthermore, while Chervon and Positec have stated their intent to appeal the PTAB's decision confirming the validity of Milwaukee Tool's patents (*see* ECF No. 118; ECF No. 85 (Case No. 2:14-CV-1295 (Positec)), they appear to be delaying until the last possible day to do so, and this is not a sufficient basis for maintaining a stay in any event. Courts have rejected arguments that an appeal to the Federal Circuit warrants maintaining a stay. For instance in *Zoll Medical Corp. v. Respironics, Inc.*, No. CV 12-1778-LPS, 2015 WL 4126741 (D. Del. Jul. 8, 2015), the court initially stayed the case pending IPR proceedings reviewing plaintiff's patent-in-suit. Similarly to the circumstances in this case, the PTO confirmed the patentability of plaintiff's patent claims at the conclusion of IPR proceedings. Defendant resisted lifting a stay, which had been in place for nearly 19 months, arguing that the court should maintain the stay pending defendant's appeal to the Federal Circuit on the possibility that the PTAB's decision may be reversed. The court granted plaintiff's motion to lift the stay noting that the possibility of reversal of the PTAB's decision was "not, in and of itself, a sufficient basis to make the patentee here continue to wait to enforce patent rights[.]" *Id.* at *1.

In addition, recent surveys of appeals of IPR decisions to the Federal Circuit indicate that successfully obtaining a reversal of a PTAB's post-grant decision in IPR remains a remote possibility. Observers of the Federal Circuit's decisions concerning the first wave of appeals of IPR and CBM proceedings note that the Federal Circuit affirmed the PTAB 's decision in 92.8% of appeals, with 56.6% of those as summary affirmances without decision. *See* John Dragseth & Craig Countryman, *Lessons from the First Wave of Post-Grant Appeals* (Feb. 10, 2016), http://fishpostgrant.com/fr-webinars/lessons-from-the-first-wave-of-post-grant-appeals/; *see also* Craig Countryman, *Lessons From Fed. Circ.'s 1st Wave Of Post-Grant Appeals*, Law360 (Dec. 16, 2015, 10:27 AM), http://www.law360.com/articles/737577/lessons-from-fed-circ-s-1st-wave-of-post-grant-appeals. In only 7.2% of appeals has the Federal Circuit reversed the PTAB's decision in an IPR or CBM proceeding. *Id.*

In light of the PTAB's decisions regarding the patentability of Milwaukee Tool's patents, the unlikelihood that the Federal Circuit will reverse the PTAB 's decisions, and the fact that the parties are direct competitors, continuing the stay is no longer justified.

## II. CONCLUSION

For the foregoing reasons, Milwaukee Tool respectfully requests the Court lift the stay in this action allowing the parties to continue discovery.

Dated this 2nd day of September, 2016.

s/ James N. Law

Scott W. Hansen
shansen@reinhartlaw.com
Paul Stockhausen
pstockhausen@reinhartlaw.com
Jessica H. Polakowski
jpolakowski@reinhartlaw.com
James N. Law
jlaw@reinhartlaw.com
Reinhart Boerner Van Deuren, S.C.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Phone: (414) 298-1000
Fax: (414) 298-8097

Jason C. White
Illinois Bar No. 6238352
jwhite@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, IL 60601
Phone: (312) 324-1775
Fax: (312) 324-1001

Sean C. Cunningham
California Bar No. 174931
Sean.Cunningham@dlapiper.com
Erin Gibson
California Bar No. 229305
Erin.Gibson@dlapiper.com
Tiffany Miller
California Bar No. 246987
Tiffany.Miller@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Phone: (619) 699-2700
Fax: (619) 699-2701

*Attorneys for Plaintiffs Milwaukee Electric Tool Corporation; Metco Battery Technologies, LLC; AC (Macao Commercial Offshore) Limited; and Techtronic Industries Co. Ltd.*

34574419